**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SHARON NEAL,** | : | |
| **Plaintiff** | : | **No. 1:13-cv-02309** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **STATE FARM MUTUAL AUTOMOBILE** | : | |
| **INSURANCE COMPANY,** | : | |
| **Defendant** | : | |

**MEMORANDUM**

Before the Court is Defendant State Farm Mutual Automobile Insurance Company's

motion to dismiss Plaintiff Sharon Neal's complaint.  (Doc. No. 5.)  For the reasons that follow,

the Court will grant the motion in part, and deny it in part.

**I.     BACKGROUND**

On or about January 27, 2011, Plaintiff was a passenger in a car when it was rear-ended

at a stop light in Harrisburg, Pennsylvania, causing Plaintiff to suffer serious injuries.  (Doc. No.

1-1 ¶¶ 6-8.)  Defendant was Plaintiff's medical insurance provider.  (Id. ¶¶ 4-5.) After the

incident, Plaintiff notified Defendant of her claim, and complied with the terms of her policy.

(Id. ¶¶ 10-16.) Defendant proceeded to pay for Plaintiff's treatment.  (Id.)  Eventually, Defendant

contracted Dr. Walter Peppelman to perform an independent medical examination (IME) of

Plaintiff and her injuries, which he performed on May 10, 2012.  (Id. ¶¶ 17-20.)  Plaintiff alleges

Dr. Peppelman has a conflict of interest, as he recently "split from a joint practice" with her

primary physician.  (Id. ¶ 41.)  Plaintiff also alleges that "Dr. Peppelman does a substantial

amount of work for Defendant and other insurance companies, and has, or may have been,

continuously providing negative [IME] reports to Defendant and other insurance companies for

the purposes of maintaining a steady source of business." (Id. ¶ 42.)

In his report, Dr. Peppelman noted, among other observations, that "[t]here may have been a cervical or lumbar strain and sprain from the accident but this has reached full recovery and she has reached pre-injury status." (Doc. No. 1-1 at 68.) Dr. Peppelman also observed in his report that Plaintiff's "physical examination shows significant findings of symptom magnification and inappropriate illness behavior." (Id.) On May 17, 2012, based on Dr. Peppelman's examination, Defendant notified Plaintiff that it "would not be honoring any additional medical treatment related to the motor vehicle accident." (Doc. No. 1-1 ¶ 21.) Plaintiff has continued to seek treatment for injuries allegedly arising out of the accident. (Id. ¶ 23.)

On July 23, 2013, Plaintiff filed a civil action in the Court of Common Pleas of Dauphin County, Pennsylvania, arising out of Defendant's failure to pay benefits. (Id.) The five-count complaint alleges that: (1) Defendant violated the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S .§ 1716 et seq. (MVFRL); (2) Defendant breached its contract; (3) Defendant refused in bad faith to pay benefits in violation of 42 Pa.C.S.§ 8371, (4) Defendant violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 P.S. § 201.1 et seq.; and (5) Defendant is liable for deceit. (Id.) On September 4, 2013 Defendant removed the action to this Court on the grounds that complete diversity existed between the parties. (Doc. No. 1.) On September 11, 2013, Defendants filed the motion to dismiss the complaint. (Doc. No. 5.) The motion is fully briefed and ripe for disposition.

## II.      LEGAL STANDARD

A motion to dismiss for failure to state a claim upon which relief can be granted tests the

legal sufficiency of the complaint.  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).  In reviewing a motion to dismiss, a court may "consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim."  Lum v. Bank of America, 361 F.3d 217, 221 n.3 (3d Cir. 2004).  The motion will only be properly granted when, taking all factual allegations and inferences drawn therefrom as true, the moving party is entitled to judgment as a matter of law.  Markowitz v. Ne. Land Co., 906 F.2d 100, 103 (3d Cir. 1990).  The burden is on the moving party to show that no claim has been stated.  Johnsrud v. Carter, 620 F.2d 29, 33 (3d Cir. 1980).  Thus, the moving party must show that the plaintiff has failed to "set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that those elements exist."  Kost, 1 F.3d at 183 (citations omitted).

A court "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss."  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906-908 (3d Cir. 1997).  Although Rule 12(b)(6) standard does not require "detailed factual allegations," there must be a "'showing,' rather than a blanket assertion of entitlement to relief. . . . '[F]actual allegations must be enough to raise a right to relief above the speculative level.'"  Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231-32 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Put otherwise, a civil complaint must "set out 'sufficient factual matter' to show that the claim is facially plausible."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

## III.   DISCUSSION

Defendants move the Court to dismiss Count One, violations of the MVFRL; Count

Three, bad faith; Count Four, violations of the UTPCPL; and Count Five, deceit.  (Doc. No. 5.)

Defendant also ask the court to dismiss Plaintiff's demand for attorney's fees under Count Two,

breach of contract.  (Id.)  Because Plaintiff states that she does not object to the dismissal of the

deceit claim or the claim for attorney's fees under Count Two, the Court will dismiss Count Five

and the claim for attorney's fees in Count Two.  (Doc. No. 8 at 12.)  The Court will proceed to

address the other counts, beginning with the claim for bad faith.

### A.    Count Three: bad faith

Plaintiff alleges that Defendant's denial of benefits associated with her policy was in

violation of Pennsylvania's bad faith statute, 42 Pa. Stat. Ann. § 8371.  In moving the Court to

dismiss this claim, Defendant argues that Plaintiff's allegations of bad faith are conclusory,

boilerplate assertions that fall short of the standard set by Twombly, and, as such, should be

dismissed for failure to state a claim for which relief can be granted.  (Doc. No. 7 at 6-8.)

Defendants further argue that Plaintiff's allegations regarding Dr. Peppelman's bias in his

examination of Plaintiff are directed solely toward Dr. Peppelman and therefore do not implicate

Defendant.  (Id.)  Plaintiff counters that she has sufficiently alleged bad faith on the part of

Defendant by its abuse of the independent medical examination process.  (Doc. No. 8 at 10-11.)

Pennsylvania courts have defined bad faith as "any frivolous or unfounded refusal to pay

proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action

against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means

a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-interest

or ill will; mere negligence or bad judgment is not bad faith."  Morrison v. Mountain Laurel

Assur. Co., 748 A.2d 689, 691 (Pa. Super. Ct. 2000) (citations omitted).  A plaintiff must "show

[1] that the defendant did not have a reasonable basis for denying benefits under the policy and

[2] that defendant knew or recklessly disregarded its lack of reasonable basis in denying the

claim." UPMC Health Sys. v. Metro. Life Ins. Co., 391 F.3d 497, 505 (3d Cir. 2004) (quoting

Terletsky v. Prudential Prop. and Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. Ct. 1994)).

Defendant is correct that paragraph 43 of Plaintiff's complaint makes general, conclusory

allegations of bad faith concerning Defendant's failure to pay benefits due, failure to effectuate

prompt, fair and equitable coverage, failure to evaluate Plaintiff's claim, compelling Plaintiff to

institute litigation in order to recover amounts due, and failure to use an approved Peer Review

Organization in exploring Plaintiff's claim.  However, the Court disagrees that Plaintiff's

allegation regarding State Farm's use of a biased independent medical examiner is insufficient

and does not implicate the Defendant.  Paragraphs 40-42 of the complaint, under Count Three -

Bad Faith, read as follows:

> 40.  It is believed, and therefore averred, that Defendant employed
> Dr.Peppelman to perform the independent medical examination in bad
> faith.
>
> 41.  Dr, Peppelman had previously split from a joint practice with Dr.
> Zeliger, Plaintiff's primary physician.
>
> 42.  Moreover, it is believed, and therefore averred, that Dr. Peppelman
> does a substantial amount of work for Defendant and other insurance
> companies, and has, or may have been, continuously providing negative
> [IME] reports to Defendant and other insurance companies for the
> purposes of maintaining a steady source of business.

(Doc. No. 1-1 at 12.)  The Court may reasonably infer that Paragraphs 40 and 42 allege not just

that Dr. Peppelman was biased, but that Defendant was aware Dr. Peppelman was biased and

providing negative reports, and Defendant employed him in bad faith for that purpose.  See

Armstrong Surgical Ctr., Inc. v. Armstrong Cnty. Mem'l Hosp., 185 F.3d 154, 155 (3d Cir. 1999)

(noting that when analyzing a motion to dismiss a court must "accept[] as true all factual allegations contained in the complaint and all reasonable inferences that can be drawn therefrom").  Accepting this factual averment as true, the Court finds it implicates Defendant and is sufficient to state a claim under Section 8314.  See Perkins v. State Farm Ins. Co., 589 F. Supp. 2d 559, 566 (M.D. Pa. 2008) (finding allegations that defendant insurer used a biased peer review when assessing a claim stated a cause of action for bad faith under Section 8371). Accordingly, Defendant's motion to dismiss Count Three of the complaint will be denied.

> **B.** **Count One: Pennsylvania Motor Vehicle Financial Responsibility Law**

In response to Defendant's motion to dismiss Count One, Plaintiff asserts that she has properly alleged violations of Sections 1797, 1716, and 1798 of the Motor Vehicle Financial Responsibility Law (MVFRL).  (Doc. No. 8 at 4-10.)

> **1.** **Section 1797**

Section 1797 provides that:

> A provider of medical treatment or rehabilitative services or merchandise or an insured may challenge before a court an insurer's refusal to pay for past or future medical treatment or rehabilitative services or merchandise, the reasonableness or necessity of which the insurer has not challenged before a PRO.

75 Pa. Stat. Ann. § 1797(b)(4).  If "a court determines that medical treatment or rehabilitative services or merchandise were medically necessary, the insurer must pay to the provider the outstanding amount plus interest at 12%, as well as the costs of the challenge and all attorney fees." 75 Pa. Stat. Ann. § 1797(b)(6).  Defendant contends that Section 1797 only applies when an insurer challenges the "reasonableness and necessity" of medical treatment.  (Doc. No. 7 at 4-6.)  Defendant asserts Section 1797 is not applicable here because Defendant denied benefits to

Plaintiff on the grounds that the causality of her injuries was at issue.  (Id.)  Plaintiff argues that

Section 1797 is not limited to disputes over "reasonableness and necessity." (Doc. No. 8 at 8-

10.) In the alterative, Plaintiff contends that the reasonableness and necessity of her treatment is

at issue in her complaint.  (Id.)

Courts consistently find that Section 1797 only applies where the reasonableness and

necessity of treatment is at issue.  See Hickey v. Allstate Prop. & Cas. Ins. Co., 722 F. Supp. 2d

609, 614 (M.D. Pa. 2010) ("The scope of section 1797 is confined to those claims challenging an

insurer's determination of the reasonableness and necessity of an insured's treatment."); Richter

v. Geico Indem. Co., 797 F. Supp. 2d 529, 532 (E.D. Pa. 2011) ("[T]he applicability of § 1797 to

a particular claim depends . . . on whether the dispute is over the reasonableness and necessity of

medical treatment.") (citation omitted); Stephano v. Tri-Arc Fin. Servs., Inc., No. 07-0743, 2008

WL 625011, at *6 n.9 (M.D. Pa. Mar. 4, 2008) ("From the explicit, narrow language of the

statute, it is evident that the legislature intended that § 1797 only govern the issue of whether the

medical treatment was necessary or reasonable.").  Thus, the question for the Court is whether

Plaintiff has alleged a dispute over the reasonableness and necessity of her treatment such that

her claim falls under Section 1797.

In its May 17, 2012 letter to Plaintiff denying any future payment, Defendant cited the

following conclusions of Dr. Peppelman in support of its decision:

> [1] There may have been a cervical or lumbar strain and sprain from the accident
> but this has reached full recovery and she has reached pre-injury status.
> [2] There is no impairment secondary to the motor vehicle accident.
> [3] The patient suffers from chronic pain syndrome and chronic myofascial
> fibromyalgia in nature.

(Doc. No. 1-1 at 68.)  Defendant insists that it only contracted with Dr. Peppelman to determine

whether Plaintiff's continuing pain was causally related to the 2011 accident, and that Dr. Peppelman's observations rule out any relation.  Therefore, asserts Defendant, Plaintiff is alleging a disagreement over causality of her symptoms, not reasonableness and necessity of treatment.  However, in rejecting Plaintiff's claim, Defendant provided her with a copy of Dr. Peppelman's IME report, which contained, among other observations, that "her physical examination shows significant findings of symptom magnification and inappropriate illness behavior."  (Id. at 67.)  The Court finds that this letter suggests concerns over the necessity of treatment and the sincerity of Plaintiff's complaints. The Court therefore cannot conclude that causality was the sole issue addressed by the examination and the sole basis for refusal to pay Plaintiff.  Thus, to the extent the Court concludes that Plaintiff's allegations include a dispute over the reasonableness and necessity of treatment, Plaintiff has stated a claim under Section 1797. See Cieplinski v. State Farm Mut. Auto. Ins. Co., No. 10-1093, 2010 WL 2926846, at *3 (M.D. Pa. July 26, 2010) ("At this stage of litigation, this Court is only determining whether Plaintiff has made sufficient allegations that she should be entitled to offer evidence to support her claims.").

### 2.      Sections 1716 and 1798

Plaintiff also asserts violations of Sections 1716 and 1798 of the MVFRL.  Section 1716 provides:

> Benefits are overdue if not paid within 30 days after the insurer receives reasonable proof of the amount of the benefits . . .[i]n the event the insurer is found to have acted in an unreasonable manner in refusing to pay the benefits when due, the insurer shall pay, in addition to the benefits owed and the interest thereon, a reasonable attorney fee based upon actual time expended.

75 Pa. Stat. Ann. § 1716.  Under Section 1798:

> In the event an insurer is found to have acted with no reasonable foundation in refusing to pay the benefits enumerated in subsection (a) when due, the insurer shall pay, in addition to the benefits owed and the interest thereon, a reasonable attorney fee based upon actual time expended.

75 Pa. Stat. Ann. § 1798.

Defendant contends that, in light of the medical conclusions of Dr. Peppelman, it clearly had a reasonable foundation for not paying further benefits.  (Doc. No. 7 at 6.)  Plaintiff asserts both sections are based upon a reasonableness standard, and that she properly alleges that Defendant did not act reasonably in declining to pay for her treatment.  (Doc. No. 8 at 5-7.)

The Court agrees with Plaintiff that Sections 1716 and 1798 encompass claims than an insurance company has behaved unreasonably in relation to its insured.  Richter v. Geico Indem. Co., 797 F. Supp. 2d 529, 533 (E.D. Pa. 2011) (holding that Section 1716 provides a private cause of action where insurer has acted unreasonably);  Cohen v. Am. Int'l Ins. Co., No. 95-5243, 1996 WL 103793 (E.D. Pa. Mar. 7, 1996) (noting that Sections 1716 and 1798 "apply when an insurer has unreasonably denied benefits").  The Court has already concluded that Plaintiff adequately pled that Defendant acted in bad faith, rather than in a mere dispute over a failure to pay benefits.   Thus, the Court finds that Plaintiff alleges that Defendant acted unreasonably toward her, and thus states a claim under Sections 1716 and 1798.  See Danley v. State Farm Mut. Auto. Ins. Co., 808 F. Supp. 399, 402 (M.D. Pa. 1992) ("An 'unreasonable' act is one that the actor objectively should not have made, but it is not necessarily one made in 'bad faith.'").  Therefore, the Court will deny Defendant's motion to dismiss Count One.

### C.    Pennsylvania's Unfair Trade Practices and Consumer Protection Law

Plaintiff also brings a claim alleging violations of Pennsylvania's Unfair Trade Practices

and Consumer Protection Law (UTPCPL), 73 P.S. § 201-1 et seq.  An insurer can be held liable

under the UTPCPL only if it makes fraudulent misrepresentations in order to sell a policy or

some other form of misfeasance."  Aetna Cas. & Sur. Co. v. Ericksen, 903 F. Supp. 836, 841

(M.D. Pa. 1995) (emphasis added).  See Millwood v. State Farm Mut. Auto. Ins. Co., No. 08-

1698, 2009 WL 291168 (W.D. Pa. Feb. 5, 2009) ("[T] he Consumer Protection Law applies only

to claims of malfeasance . . . or of misfeasance.").  "Only malfeasance, the improper

performance of a contractual obligation, raises a cause of action under the [UTPCPL], and an

insurer's mere refusal to pay a claim which constitutes nonfeasance, the failure to perform a

contractual duty, is not actionable."  Horowitz v. Fed. Kemper Life Assur. Co., 57 F.3d 300, 307

(3d Cir. 1995).

Defendant argues that Plaintiff has only alleged nonfeasance in Defendant's failure to

pay medical bills, rather than allegations of misfeasance.  (Doc. No. 7 at 8-9.)  The Court has

already found that Plaintiff properly alleged bad faith.  Thus, Plaintiff's claim does not allege the

mere non-payment of medical bills but rather alleges Defendant intentionally used a biased

medical examiner.[1]  See Genter v. Allstate Prop. & Cas. Ins. Co., No. 11-0709, 2011 WL

2533075, at *3-5 (W.D. Pa. June 24, 2011) (denying to dismiss UTPCPL claim and observing

---

[1]Although some courts have held that a plaintiff must plead all the elements of common
law fraud in order to state a claim under the UTPCPL, see, e.g., Perkins, 589 F. Supp. at 567-
568, recent cases decline to apply the fraud pleading standards to a UTPCLP claim, noting
amendments to the Law that included a prohibition on deceptive behavior in addition to
fraudulent behavior.  See, e.g., Sheet Metal Workers Local 441 Health & Welfare Plan v.
GlaxoSmithKline, PLC, 737 F. Supp. 2d 380, 421 (E.D. Pa. 2010);  Wilson v. Parisi, 549 F.
Supp. 2d 637, 666 (M.D. Pa. 2008).  The Court finds the reasoning of the latter cases persuasive,
and therefore declines to apply a fraud pleading standard to Plaintiff's claim.

10

that "courts have found misfeasance where an insured has alleged wrongful and intentional action by an insurer to deny the insured's reasonable claims"); Lites v. Great Am. Ins. Co., No. 00-525, 2000 WL 875698, at *7 (E.D. Pa. June 23, 2000) (denying motion to dismiss UTPCPL claim where "the plaintiffs assert specific allegations that, if true, may constitute the improper performance of a contractual obligation, as well as deceptive practices by the defendant").  Thus, the Court finds Plaintiff has stated a claim under the UTPCPL and will decline to dismiss Count Four.

IV.     **CONCLUSION**

The Court concludes that Plaintiff has adequately alleged that Defendant (1) violated provisions of the MVFRL, (2) acted in bad faith, and (3) violated the UTPCPL.  Thus, the Court will deny Defendant's motion to dismiss those claims.  However, the Court will dismiss Plaintiff's deceit claim, as well as dismiss the claim for attorney's fees in Count Two.  An order consistent with this memorandum follows.