## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHARON NEAL,** | : | |
| **Plaintiff** | : | **No. 1:13-cv-02309** |
| | : | |
| **v.** | : | **(Judge Kane)** |
| | : | |
| **STATE FARM MUTUAL AUTOMOBILE** | : | |
| **INSURANCE COMPANY,** | : | |
| **Defendant** | : | |

### MEMORANDUM

Before the Court is Defendant State Farm Mutual Automobile Insurance Company's

motion for partial summary judgment, and its motion to bifurcate the trial.  (Doc. No. 22.)   For

the reasons that follow, the Court will grant the motion for summary judgment, and deny as moot

the motion to bifurcate the trial.

## I.    BACKGROUND[1]

On or about January 27, 2011, Plaintiff Sharon Neal was a passenger in a car when it was

rear-ended at a stop light.  (Doc. No. 21 ¶ 3.)  At the time of the accident, Plaintiff had

automobile insurance provided by Defendant that included, among other provisions, $25,000 in

medical payments coverage.  (Id. ¶ 4.)  On February 28, 2011, Plaintiff reported the claim to

Defendant and communicated with Defendant's claim representative Donna Samarya.  (Id. ¶ 5.)

Plaintiff informed Ms. Samarya that her neck and back areas were injured in the accident.  (Id.)

Plaintiff also informed Ms. Samarya that she previously had neck and back injuries following a

---

[1] The following facts of record are mostly taken from Defendant's statement of material facts (Doc. No. 21), and are undisputed unless otherwise noted.  Defendant's statement of material facts contains specific citations to the record at each numbered paragraph.

2005 accident,[2] that she had a left knee replacement in 2009, and that she was on disability due to her medical history.  (Id.)  Plaintiff further informed Ms. Samarya that she was nevertheless "doing fine" until the January 27, 2011 accident.[3]  (Id.)

On June 23, 2011, Defendant was informed that Penn Rehabilitation Associates had been treating Plaintiff since her 2005 accident and had seen her as recently as January 3, 2011.  (Doc. No. 21 ¶ 6.)  Ms. Samarya thereafter wrote and called Penn Rehabilitation Associates for copies of Plaintiff's pre-accident records.  (Id. ¶¶ 7-10.)  After Ms. Samarya received the records, she communicated with Plaintiff and requested that an independent medical examination ("IME") be performed on Plaintiff to address if her ongoing complaints were still accident related and whether she had reached pre-injury status from the accident.  (Id. ¶¶ 10-12.)

Accordingly, on February 7, 2012, Defendant contacted a vendor, The Prime Network, requesting that it arrange an IME by an orthopedic surgeon.  (Doc. No. 21 ¶ 14.)  The Prime Network initially scheduled another physician to perform the IME; however, Plaintiff requested an examination closer to Harrisburg, her residence, so The Prime Network arranged for Dr. Walter C. Peppelman to perform the IME.  (Id. ¶¶ 15-16.)  Prior to going to the IME, Plaintiff briefly discussed Dr. Peppelman with her current physician, Dr. Zeliger; the two doctors formerly had a practice together.  (Id. ¶ 19.)

---

[2]  Plaintiff also testified in a deposition that she was also involved in motor vehicle accidents in both 2003 and 2009 in which she also injured her back and neck.  (Doc. No. 21 ¶ 33.)

[3]  In her deposition, Plaintiff admitted to experiencing neck and upper back pain in the days leading up to the January 2011 accident, pain for which she was taking Percocet and Oxycontin daily.  (See Doc. No. 25 ¶ 56.)  Plaintiff also testified that her pain increased following the January 2011 accident.

Dr. Peppelman conducted the IME on May 10, 2012.  Among his many conclusions were the observations that: (1) he was "unable to detect any specific injury which occurred from the most recent motor vehicle accident;" (2) "[Plaintiff] at the time of the event, may have had a cervical or lumbar strain and sprain, but this has reached maximal medical improvement and full recovery;" (3) "[Plaintiff's] physical examination shows significant finding of symptom magnification and inappropriate illness behavior;" and that (4) "[Plaintiff] has reached her pre-injury status . . . . [Plaintiff] has reached full recovery from the accident on January 27, 2011, and from any alleged injury which may have occurred during the accident."  (Doc. Nos. 21 ¶ 24; 19-2 at 65-70.)

Claim representative Michele Depola received the report of Dr. Peppelman on May 17, 2012, and Defendant decided that all bills after the date of the IME would be denied.  (Doc. No. 21 ¶ 38.)  That same day, Ms. Depola wrote to Plaintiff, specifically noting Dr. Peppelman's conclusion that Plaintiff had reached "pre-injury" status – that is, her status prior to the January 27, 2011 accident.  (Id. ¶ 19.)  Plaintiff has continued to receive treatment (Doc. No. 23 ¶ 47); however, the parties dispute whether Dr. Peppelman's assessment was correct and whether the injuries are in fact attributable to the January 27, 2011 accident.[4]

On September 10, 2012, Plaintiff's former attorney contacted and informed Defendant that Dr. Peppelman and Plaintiff's treating physician, Dr. Zeliger, were formerly involved in a partnership with each other, and represented to Defendant that Dr. Peppelman had been involved

_____

[4] It was the opinion of Plaintiff's treating physician, Dr. Zeliger that Plaintiff had fully recovered from prior motor vehicle accidents at the time of the January 2011 accident.  (See Doc. No. 23 ¶ 48; 19-2 at 25, 33.)  Defendant acknowledges this dispute over the source of Plaintiff's ongoing injuries, which it asserts is the reason it has not moved for summary judgment on Count I, breach of contract.

with voting Dr. Zeliger out of the practice.  (Doc. Nos. 23 ¶¶ 64-65; 23-1 at 7.)  Defendant,

however, did not reject the IME results or schedule a new examination.

On July 23, 2013, Plaintiff filed a complaint in the Court of Common Pleas of Dauphin

County, Pennsylvania, arising out of Defendant's refusal to pay benefits.  (Id.)  The five-count

complaint brought claims that: (1) Defendant violated the Pennsylvania Motor Vehicle Financial

Responsibility Law, 75 Pa. Stat. § 1716 et seq. ("MVFRL"); (2) Defendant breached its contract;

(3) Defendant refused in bad faith to pay benefits in violation of 42 Pa. Stat. § 8371, (4)

Defendant violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law

("UTPCPL"), 73 Pa. Stat. § 201.1 et seq.; and (5) Defendant is liable for deceit.  (Id.) On

September 4, 2013 Defendant removed the action to this Court.  Defendant thereafter filed a

motion to dismiss, which the Court granted in part, dismissing Count Five (Deceit) and the claim

for attorney's fees for the breach of contract claim.  (Doc. No. 11.)

Following discovery, on January 9, 2015, Defendant filed the present motion for partial

summary judgment.  (Doc. No. 19.)  Defendant moves the Court to award judgment in its favor

on Counts One, Three, and Four; Defendant has not moved for summary judgment on Count

Two, breach of contract.  (Id.)  The motion is fully briefed and ripe for disposition.

## II.    LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment is

warranted "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute is

material if it might affect the outcome of the suit under the applicable law, and it is genuine only

if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a

verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49

(1986).  At summary judgment, the inquiry is whether the evidence presents a sufficient

disagreement to require submission to the jury or whether it is so one-sided that one party must

prevail as a matter of law.  Id. at 251-52.  In making this determination, the Court must "consider

all evidence in the light most favorable to the party opposing the motion."  A.W. v. Jersey City

Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

        The moving party has the initial burden of identifying evidence that it believes shows an

absence of a genuine issue of material fact.  Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d

135, 145-46 (3d Cir. 2004).  Once the moving party has shown that there is an absence of

evidence to support the non-moving party's claims, "the non-moving party must rebut the

motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal

memoranda, or oral argument."  Berckeley Inv. Grp. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir.

2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  If the non-moving party "fails

to make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden at trial," summary judgment is warranted.

Celotex, 477 U.S. at 322.  With respect to the sufficiency of the evidence that the non-moving

party must provide, a court should grant summary judgment when the non-movant's evidence is

merely colorable, conclusory, or speculative.  Anderson, 477 U.S. at 249-50.  There must be

more than a scintilla of evidence supporting the non-moving party and more than some

metaphysical doubt as to the material facts.  Id. at 252; see also Matsushita Elec. Indus. Co. v.

Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Further, a party may not defeat a motion for

summary judgment with evidence that would not be admissible at trial.  Pamintuan v. Nanticoke

5

Mem'l Hosp., 192 F.3d 378, 387 (3d Cir. 1999).

## III.   DISCUSSION

### A.   Bad faith

Defendant first argues that it is entitled to summary judgment on Plaintiff's bad faith

claim pursuant to 42 Pa. Stat. § 8371.  (Doc. No. 20 at 8-11.)  Defendant contends there is no

evidence establishing that "the IME was a sham," or that Defendant lacked a reasonable basis in

deciding to terminate Plaintiff's payments.  (Id.)  Plaintiff counters that there are genuine issues

of material fact as to whether Defendant acted with no reasonable foundation in (1) "refusing to

reconsider its decision or schedule a new IME when presented with a potential conflict of

interest" and (2) choosing "to automatically follow the findings of the IME Report despite

conflicting evidence regarding the nature and causation of Plaintiff's injuries."  (Doc. No. 22 at

9-13.)

Pennsylvania courts have defined bad faith as "any frivolous or unfounded refusal to pay

proceeds of a policy; it is not necessary that such refusal be fraudulent.  For purposes of an

action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and

means a breach of a known duty (i.e., good faith and fair dealing), through some motive of self-

interest or ill will; mere negligence or bad judgment is not bad faith."  Morrison v. Mountain

Laurel Assur. Co., 748 A.2d 689, 691 (Pa. Super. Ct. 2000) (citations omitted).  "To make out a

claim of bad faith, a plaintiff must show by clear and convincing evidence that the insurer (1) did

not have a reasonable basis for denying benefits under the policy; and (2) knew or recklessly

disregarded its lack of reasonable basis in denying the claim."  W.V. Realty, Inc. v. N. Ins. Co.,

334 F.3d 306, 312 (3d Cir. 2003).  Thus, "an insurer may defeat a claim of bad faith by showing

that it had a reasonable basis for its actions." <u>Post v. St. Paul Travelers Ins. Co.</u>, 691 F.3d 500, 522 (3d Cir. 2012).

"The clear and convincing standard requires that the plaintiff show that the evidence is so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith." <u>J.C. Penney Life Ins. Co. v. Pilosi</u>, 393 F.3d 356, 367 (3d Cir. 2004) (internal quotations omitted).  Because the burden on a plaintiff in a bad faith action is "clear and convincing evidence," "the insured's burden in opposing a summary judgment motion brought by the insurer is commensurately high because the court must view the evidence presented in light of the substantive evidentiary burden at trial." <u>Nw. Mut. Life Ins. Co. v. Babayan</u>, 430 F.3d 121, 137 (3d Cir. 2005) (internal quotations omitted).

The Court finds that no reasonable fact finder could conclude based on the record before the Court that Defendant lacked a reasonable basis for terminating Plaintiff's benefits.  First, regarding Plaintiff's contentions about Dr. Peppelman's alleged conflict of interest, there is no dispute that Defendant did not know about the prior association between the doctors at the time The Prime Network arranged for the IME to be performed by Dr. Peppelman.  (<u>See</u> Doc. No. 22 at 12.)  It is further undisputed that Plaintiff herself <u>did</u> know of the doctors' prior association (Doc. No. 21 ¶ 19), but there is no evidence in the record that Plaintiff informed Defendant of any alleged conflict at that time, or that, based on her conversation with Dr. Zeliger regarding Dr. Peppelman, she believed that Dr. Peppelman would be biased against her in performing the IME.  It was months later, following the unfavorable IME, that Plaintiff's former attorney contacted Defendant to inform them of the doctors' prior partnership.  Plaintiff posits that the failure to reject the results or to order a new IME at this time amounts to bad faith.

However, the Court finds that no reasonable fact finder could conclude from Plaintiff's evidence that Dr. Peppelman was in fact biased against Plaintiff or, more importantly, that Defendant <u>knew or should have known</u> Dr. Peppelman was biased at the time, thus evincing bad faith in adopting his findings.  Indeed, Plaintiff does not endeavor to explain precisely how this former association between the doctors, and Dr. Peppelman's termination of that partnership, should have reasonably resulted in Defendant assuming Dr. Peppelman was biased concerning <u>Plaintiff's</u> IME or how it in fact did prejudice Dr. Peppelman's examination of Plaintiff.  <u>See MGA Ins. Co. v. Bakos</u>, 699 A.2d 751, 754 (Pa. Super. Ct. 1997) ("A recovery for bad faith requires clear and convincing evidence of bad faith, rather than mere insinuation[.]").  Plaintiff's allegations of bias are speculative and not supported by the evidence in the record.[5]  Considering the lack of evidence before the Court clearly establishing a conflict of interest as to Plaintiff's IME – indeed, as Defendant points out, Plaintiff did not conduct any discovery into the alleged conflict, nor depose either doctor during discovery about any possible conflict (Doc. No. 25 ¶ 65) – the Court identifies no material disputes of fact on this issue that preclude granting summary judgment to Defendant.  <u>See Berckeley Inv. Grp. Ltd. v. Colkitt</u>, 455 F.3d 195, 201 (3d Cir. 2006) ("[T]he non-moving party must rebut the [summary judgment] motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument.").

Because there is no evidence that Defendant should have been aware of a clear conflict of

---

[5] The Court observes that the claim activity log indicates that when Plaintiff's former attorney initially communicated with Defendant regarding the alleged conflict, counsel's "main concern [was] not so much [with any] possible conflict of interest," but rather with his disagreement with the ultimate results.  (<u>See</u> Doc. No. 23-1 at 7.)

interest inuring to Plaintiff's detriment, the insurer clearly had a reasonable basis in utilizing Dr. Peppelman's IME despite knowledge of a former partnership between the doctors.[6] Alternatively, although Plaintiff may argue that the former association between the doctors creates the appearance of impropriety, in the absence of any strong evidence of bias available to Defendant – either at the time, or now – the Court finds that no fact-finder could conclude that relying on Dr. Peppelman's IME was unreasonable and constitutes bad faith. See Post, 691 F.3d at 523 ("Even questionable conduct giving the appearance of bad faith is not sufficient to establish [bad faith] so long as the insurer had a reasonable basis to deny coverage.").

Similarly, Defendant is entitled to summary judgment to the extent Plaintiff's bad faith claim rests on the theory that Defendant "automatically" relied on the IME's conclusions regarding the source of Plaintiff's injuries. First, an insurer is entitled to rely on the findings of an IME, as Defendant did here, even in the face of contrary medical opinions. See Wedemeyer v. U.S. Life Ins. Co. In City of New York, No. 05-6263, 2007 WL 710290, at *10 (E.D. Pa. Mar. 6, 2007) ("[A]n insurer is not required to give greater credence to opinions of treating medical providers."); Seidman v. Minnesota Mut. Life Ins. Co., 40 F. Supp. 2d 590 (E.D. Pa. 1997) (awarding summary judgment to insurer where, although "the adequacy of the psychiatric examinations may be disputed," "it is not bad faith for [the insurer] to rely on the IMEs of qualified health professionals who examined [insured] in a usual and customary fashion"). Second, in suggesting that there is evidence that the IME itself was flawed, Plaintiff points, first, to her allegations of bias, which as the Court discussed earlier, have no basis in the record

---

[6] Along these lines, the Court agrees with Defendant that absent strong additional evidence, "as a practical matter, the fact that Dr. Peppelman and Dr. Zeliger may have been partners at one point but are no longer does not present a conflict." (See Doc. No. 24 at 4.)

evidence.  Plaintiff also points to her testimony that the IME lasted no more than 15 minutes to suggest there is evidence that the IME was somehow inadequate, but Plaintiff points to no authority setting forth that any greater evaluation was required, or that any failure to do so went beyond mere negligence and constituted bad faith conduct by Defendant.  Lehman v. Victoria Fire & Cas. Ins. Co., No. 09-1542, 2011 WL 2457928, at *10 (W.D. Pa. June 16, 2011) ("[A]lthough these and the other so-called 'inadequacies' in the investigation could be considered negligent or indicative of poor judgment, they are insufficient to sustain a bad faith claim."); Krisa v. The Equitable Life Assurance Soc'y, 113 F. Supp. 2d 694, 704 (M.D. Pa. 2000) ("The insurance company also is not required to show the process by which it reached its conclusion was flawless or that the investigatory methods it employed eliminated possibilities at odds with its conclusion.") (citation omitted).  In sum, the record evidence is insufficient to allow a reasonable fact-finder to find that Defendant exhibited bad faith in relying on Dr. Peppelman's IME, and will grant summary judgment to Defendant on Plaintiff's bad faith claim.

## B.    Violations of the Pennsylvania Motor Vehicle Financial Responsibility Law (MVFRL)

### 1.    Section 1797

Defendant moves for summary judgment on Plaintiff's claim under Section 1797 of the MVFRL.  Defendant contends that the evidence of record shows that Defendant challenged the cause of Plaintiff's injuries, not the reasonableness or necessity of her treatment.  (Doc. No. 20 at 12-13.)  Plaintiff contends that Section 1797 applies because Dr. Peppelman opined as to the reasonableness and necessity of Plaintiff's treatment in addition to his conclusions regarding the cause of her asserted injuries.  (Doc. No. 22 at 6-9.)  Therefore, according to Plaintiff, Section 1797 applies, and Defendant should have addressed Plaintiff's condition through the peer review

10

process.  (Id.)

Plaintiff asserts a claim under Section 1797, which "set up a peer review plan by which an insurer could challenge the reasonableness and necessity of an insured's treatment."  Martino v. Allstate Indemn. Co., No. 08-1985, 2009 WL 3066646, at *3 (M.D. Pa. Sept. 22, 2009). Section 1797(b)(4) provides that:

> A provider of medical treatment or rehabilitative services or merchandise or an insured may challenge before a court an insurer's refusal to pay for past or future medical treatment or rehabilitative services or merchandise, the reasonableness or necessity of which the insurer has not challenged before a [peer review organization].

75 Pa. Stat. § 1797(b)(4).  If "a court determines that medical treatment or rehabilitative services or merchandise were medically necessary, the insurer must pay to the provider the outstanding amount plus interest at 12%, as well as the costs of the challenge and all attorney fees."  75 Pa. Stat. § 1797(b)(6).  As the Court has already found in prior orders in this case (see Doc. No. 10), Section 1797 applies only to disputes over the reasonableness and necessity of medical trreatment.  See Hickey v. Allstate Prop. & Cas. Ins. Co., 722 F. Supp. 2d 609, 614 (M.D. Pa. 2010) ("The scope of section 1797 is confined to those claims challenging an insurer's determination of the reasonableness and necessity of an insured's treatment.").  In contrast, Section 1797 does not apply to disputes over the cause of injuries, as "the medical reasonableness or necessity of an injury is conceptually distinct from the question [of] whether that injury is causally related to a particular motor vehicle accident."  Wright v. Ohio Cas. Grp. Ins. Co., No. 09-0076, 2009 WL 1120354, at *4 (M.D. Pa. Apr. 27, 2009); see Hickey, 722 F. Supp. 2d at 614.

The Court finds that Defendant is entitled to summary judgment regarding Plaintiff's

claim under Section 1797 of the MVFRL.  In arguing that factual issues preclude summary

judgment, Plaintiff contends that some of the questions prepared by Defendant for use during Dr.

Peppelman's IME implicate the reasonableness and necessity of further treatment, rather than

causation of her current injuries.  (See Doc. No. 19-2 at 73.)  Further, although Plaintiff

acknowledges that Dr. Peppelman made certain conclusions regarding the causation of Plaintiff's

injuries (Doc. No. 22 at 8), Plaintiff points to some of Dr. Peppelman's observations, such as his

findings that the Plaintiff "shows significant findings of symptom magnification and

inappropriate illness behavior," as suggesting that Dr. Peppelman was also challenging the

reasonableness and necessity of further treatment.  (See id. at 70.)

However, the Court does not agree that this precludes summary judgment.  Dr.

Peppelman found that Plaintiff's current complaints were not related to the January 27, 2011

auto accident because Plaintiff had reached "pre-injury status,"[7] and Defendant cited this finding

regarding causation in its letter denying coverage.  (See Doc. No. 19-2 at 65.)  Thus, any

observations in Dr. Peppelman's IME that may be construed as addressing the reasonableness

and necessity of further treatment are ultimately irrelevant because the record indicates that

Defendant denied coverage on the basis that any of Plaintiff's current injuries were not caused

by the accident for which it insured Plaintiff.  See Richter v. Geico Indem. Co., 797 F. Supp. 2d

529, 532 (E.D. Pa. 2011) (finding that Section 1797 does not apply where "Defendant argues it is

not the party responsible for paying for Plaintiff's treatment").  Stated differently, any analyses

by Dr. Peppelman directed to the reasonableness and necessity of Plaintiff's ongoing treatment

---

[7] Along these lines, Dr. Peppelman wrote that Plaintiff would "never be pain free" but
had "reached full recovery" from any injuries which may have occurred during the [January 27,
2011] accident.  (Doc. No. 19-2 at 70.)

are <u>ultimately immaterial for purposes of Plaintiff's entitlement to benefits</u> because Defendant

was entitled to deny coverage based on Dr. Peppelman's findings regarding the causation of her

current condition alone.  Section 1797 does not require that Defendant address this issue of

causality through peer review.  <u>See</u> <u>Martino</u>, 2009 WL 3066646, at *4 (citing cases for the

proposition that challenges to causation do not apply to Section 1797).  Accordingly, the Court

finds that Defendant is entitled to summary judgment on Plaintiff's claim under Section 1797.

### 2.       Section 1798

Defendant also moves for summary judgment on Plaintiff's claims for attorney's fees

under the MVFRL (Doc. No. 19.), which fees Plaintiff seeks pursuant to Sections 1716 and 1798

(Doc. No. 1.).[8]  Section 1716 provides that:

> Benefits are overdue if not paid within 30 days after the insurer receives
> reasonable proof of the amount of the benefits . . .[i]n the event the insurer
> is found to have acted in an unreasonable manner in refusing to pay the
> benefits when due, the insurer shall pay, in addition to the benefits owed
> and the interest thereon, a reasonable attorney fee based upon actual time
> expended.

75 Pa. Stat. § 1716.  Similarly, Section 1798 provides that:

> In the event an insurer is found to have acted with no reasonable
> foundation in refusing to pay the benefits enumerated in subsection (a)
> when due, the insurer shall pay, in addition to the benefits owed and the
> interest thereon, a reasonable attorney fee based upon actual time
> expended.

---

[8] Plaintiff appears to suggest that Defendant has not in fact moved for summary judgment on the claims for fees under Section 1716.  (Doc. No. 22 at 9-10 n.4)  Although it is true that Defendant did not <u>specifically</u> identify Section 1716, instead highlighting only Section 1798, Defendant's motion seeks judgment on the Count Four MVFRL claim, which necessarily incorporates Section 1716 in its entirety.  (<u>See</u> Doc. Nos. 19, 19-1.)  Thus, it appears to the Court that Defendant moved for summary judgment as to Section 1716.  Moreover, as Plaintiff herself points out (Doc. No. 22 at 9-10 n.4), the analysis under Section 1716 is essentially identical to the analysis under Section 1798.   Thus, if Plaintiff is not entitled to fees under Section 1798, she is also not entitled to fees under Section 1716.

75 Pa. Stat. § 1798.  As the Court noted in its prior order addressing the motion to dismiss in this action, Sections 1716 and 1798 both encompass claims that an insurance company has behaved unreasonably in relation to its insured.  Richter v. Geico Indem. Co., 797 F. Supp. 2d 529, 533 (E.D. Pa. 2011) (holding that Section 1716 provides a private cause of action where insurer has acted unreasonably); Cohen v. Am. Int'l Ins. Co., No. 95-5243, 1996 WL 103793 (E.D. Pa. Mar. 7, 1996) (noting that Sections 1716 and 1798 "apply when an insurer has unreasonably denied benefits").  As the Court found above, there is insufficient evidence in the record from which a reasonable fact-finder could conclude that Defendant acted unreasonably in relying on Dr. Peppelman's IME and terminating her benefits.  Accordingly, the Court will dismiss Plaintiff's claims for attorney's fees under the MVFRL.

**C.**     **Violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law**

Defendant lastly moves for summary judgment on Plaintiff's claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 Pa. Stat. § 201-1 et seq.  As the Court noted in its earlier motion to dismiss, an insurer can be held liable under the UTPCPL only if it makes fraudulent misrepresentations in order to sell a policy . . . or some other form of misfeasance."  Aetna Cas. & Sur. Co. v. Ericksen, 903 F. Supp. 836, 841 (M.D. Pa. 1995) (internal citation omitted).  See Millwood v. State Farm Mut. Auto. Ins. Co., No. 08-1698, 2009 WL 291168 (W.D. Pa. Feb. 5, 2009) ("[T]he Consumer Protection Law applies only to claims of malfeasance . . . or of misfeasance.").  "Only malfeasance, the improper performance of a contractual obligation, raises a cause of action under the [UTPCPL], and an insurer's mere refusal to pay a claim which constitutes nonfeasance, the failure to perform a contractual duty, is not actionable."  Horowitz v. Fed. Kemper Life Assur. Co., 57 F.3d 300, 307 (3d Cir. 1995).

Plaintiff's UTPCPL claim relies on the same arguments that underlie her bad faith claims, specifically that Defendant committed malfeasance in following the results of the IME despite conflicting opinions, and in disregarding a conflict of interest.[9]  But for the reasons discussed at length above, Plaintiff has not adduced evidence from which a reasonable fact-finder could conclude Defendant acted in bad faith and without a reasonable basis in relying on the IME of Dr. Peppelman in terminating Plaintiff benefits.  Similarly, there is insufficient evidence to support a jury finding that any of that behavior constituted malfeasance under the UTPCPL, and the Court will grant summary judgment to Defendant on this count as well.

### D.        Motion to bifurcate the trial

On May 4, 2015, Defendant also filed a motion to bifurcate the trial.  (Doc. No. 26.) Defendant contends that the Court should bifurcate the trial and (1) first hold a trial on the breach of contract count, and (2) thereafter proceed to trial on the remaining counts before the same jury.  (Id.)  Because the Court is granting summary judgment to Defendant on all counts other than the breach of contract count, Defendant's motion to bifurcate has been rendered moot.

---

[9] The Court notes that, confusingly, in opposing summary judgment on the UTPCPL count, Plaintiff has in part also copied verbatim the corresponding section of her October 10, 2013, brief in opposition to the motion to dismiss.  (See Doc. Nos.  8 at 11-12, 22 at 13-14.) This section argues that Plaintiff has "properly pleaded a [UTPCPL] claim" concerning the complaint's allegations that "Defendant purposely fully chose and employed Dr. Peppelman to perform the IME knowing he was likely to give a report favorable to Defendant," as he had been continuously providing negative IME reports to Defendant and other insurers.  (Id.)  It appears to the Court that this was in error, not only in that it invokes the incorrect standard of review on summary judgment, but further because it does not appear that Plaintiff is still pursuing relief based on this allegation.  Plaintiff identifies no evidence in the record that speaks to this point, and devotes no new briefing to it other than that directly recycled from her October 10, 2013 filing.  Indeed, it is undisputed that the evidence indicates that Defendant did not first choose Dr. Peppelman to perform the IME.  (See Doc. No. 22 at 12.)

**IV.     CONCLUSION**

For the foregoing reasons, the Court will grant Defendant's motion for partial summary judgment on Counts One, Three, and Four of Plaintiff's complaint.  It will also deny as moot Defendant's motion to bifurcate the trial.  An order consistent with this memorandum follows.